**Thomas A. BEATTY, Plaintiff,**

v.

**Glenn GOORD; Lester Wright; Satish Kapoor; Ernest Lofton; Tint Maw; Defendants.**

**No. 98 CIV 2136 RMB.**

United States District Court, S.D. New York.

March 16, 2000.

Michael B. Lumer, New York City, for Plaintiff.

John P. Barry, Attorney General, State of New York, New York City, for Defendants.

## DECISION AND ORDER

BERMAN, District Judge.

### Background

Thomas A. Beatty ("Beatty" or "Plaintiff"), an inmate at Sing Sing Correctional Facility ("Sing Sing"), filed this action on or about March 24, 1998, against Glenn Goord, Commissioner of the New York State Department of Correctional Services ("DOCS"); Dr. Lester Wright, Associate Commissioner/Chief Medical Officer of DOCS; Dr. Satish Kapoor, former Medical Director at Sing Sing, Dr. Ernest Lofton, current Medical Director at Sing Sing, and Dr. Tint Maw, who was employed on the medical staff at Sing Sing (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983.[1] Plaintiff contends that Defendants have been deliberately indifferent to his need for urological treatment and, therefore, have violated the Eighth Amendment to the United States Constitution.[2] Plaintiff seeks, *inter alia*, "actual and punitive damages against defendants Kapoor, Maw and Wright" and an "Order from the Court requiring defendants Goord and Lofton to ensure that plaintiff continues to receive all urological treatment as ordered by his physicians ..." (Complaint at 11).

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), asserting, among other things, that Plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* **For the reasons set forth below, Defendants'**

1. Plaintiff is represented by attorney Michael Lumar.

2. In December 1993, Beatty filed a similar action in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 1983 against numerous medical personnel on staff or associated with Green Haven Correctional Facility ("Green Haven"), where Beatty was housed prior to his transfer to Sing Sing. *See Beatty v. Charkravorty et al.,* 93 Civ. 8300(DLC)("Beatty I"). Beatty alleged, as he does here, that his Eighth Amendment rights had been violated in connection with the urological care that he received while at Green Haven. Defendants moved for summary judgment in Beatty I. In response, Beatty opposed defendants motion and moved "to amend his complaint to allow him to bring a similar claim concerning his treatment after his transfer to Sing Sing ... in 1994." *Beatty v. Charkravorty,* 1997 WL 605112 at *1 (S.D.N.Y. Oct. 1, 1997), *aff'd,* 165 F.3d 13 (2d Cir.1998), *cert. denied,* 526 U.S. 1055, 119 S.Ct. 1366, 143 L.Ed.2d 526 (1999). In an Opinion dated September 30, 1997, United States District Judge Denise L. Cote granted defendants' motion for summary judgment finding, among other things, that "the plaintiff has failed to produce evidence that any of the defendants was deliberately indifferent to his serious medical needs." *Id.* at *5. Judge Cote also denied Beatty's motion to amend his complaint to add, *inter alia*, defendants from Sing Sing. In so ruling, Judge Cote stated that "there is no prejudice to the plaintiff because, as he concedes, he can allege the claims arising from his care at Sing Sing in a separate action." *Id.* at *7.

Paragraphs 9–24 of the instant complaint pertain to Beatty's medical treatment at Green Haven. These claims were dismissed by Judge Cote in Beatty I.

**motion for summary judgment is granted.**

### Summary Judgment Standard

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *See Fran Corp. v. United States,* 164 F.3d 814, 816 (2d Cir.1999). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In assessing whether summary judgment is appropriate, the Court must " 'resolve all ambiguities and draw all reasonable inferences against the moving party.' " *See Fran Corp.,* 164 F.3d at 816 (citation omitted). However, Fed.R.Civ.P. 56 jurisprudence is clear "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Analysis

Defendants argue here that Plaintiff's (acknowledged) failure to exhaust available administrative remedies, as required under the PLRA, mandates dismissal of this action.[3] (Defendants' ("Def.") Moving Br. at 4–6). Plaintiff counters that the PLRA exhaustion requirement is not applicable because: (i) Plaintiff had sought to incorporate the substance of the instant action in his prior action (Beatty I) which was filed prior to enactment of the PLRA and was told by the Court (Cote, J.) that he could commence this action separately without any reference to (exhaustion) preconditions; (ii) there are no administrative remedies available to Plaintiff; and (iii) Plaintiff made every reasonable effort to resolve his complaints internally at Sing Sing. (Pl. Opp. Br. at 13–15). Plaintiff also argues that dismissing the instant complaint for failure to exhaust available administrative remedies would serve no useful purpose.[4]

### PLRA

The PLRA requires, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[5] "Congress enacted this mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation." *Alexander v. Hawk,* 159 F.3d 1321, 1324 (11th Cir.1998), *rehearing en banc denied by,* 172 F.3d 884 (11th Cir. 1999) (citation omitted).[6] *See also Beeson*

---

**3.** Defendants assert a number of other arguments as well. However, the PLRA exhaustion requirement "can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit." *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 536 (7th Cir.1999).

**4.** This argument is largely a restatement of Plaintiff's other arguments and, therefore, does not warrant separate analysis.

**5.** Here, Plaintiff's claim concerning Defendants' deliberate indifference to his medical needs is an action "with respect to prison conditions" governed by the PLRA. *See, e.g., Perez,* 182 F.3d at 534 ("complaints about medical treatment in prison are complaints about 'prison conditions' ").

**6.** The *Alexander* Court went on the explain that " 'Congress did not enact the PLRA in a vacuum. It held hearings and rendered findings, concluding that prisoners file more frivolous lawsuits than any other class of per-

*v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 891 (S.D.N.Y.1998)("[t]he co-sponsors of the PLRA ... offered both the reduction of frivolous lawsuits and the end of judicial micromanagement as dual purposes of the Act") (citation omitted).

**PLRA Exhaustion Applies to Cases Filed On or After April 26, 1996**

■ The exhaustion requirement applies to cases, such as this one, "filed on or after the April 26, 1996 effective date of the PLRA." *White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997). The instant action, as noted, was filed on March 24, 1998, almost two years after the PLRA effective date. Plaintiff's argument that he should be exempt from the PLRA exhaustion requirement because Beatty I was filed before April 26, 1996 is unavailing. (Pl. Opp. Br. at 13). First, Beatty I was a separate action brought against different defendants and involving conduct at a different correctional facility over a different period of time. Second, Judge Cote expressly denied Plaintiff's motion to amend his complaint in Beatty I to incorporate his present claims. *See Beatty,* 1997 WL 605112 at *7 ("the Court denies leave to amend to add claims for the care received at Sing Sing").[7] And, even if Judge Cote had granted Plaintiff leave to amend his complaint in Beatty I, it is not certain that Plaintiff would have been "exempt" from

the exhaustion requirement of the PLRA. *See Braun v. Stotts,* 1997 WL 383034 at *2 (D. Kan. June 19, 1997), *aff'd,* 134 F.3d 382 (10th Cir.1998), *cert. denied,* 525 U.S. 1025, 119 S.Ct. 558, 142 L.Ed.2d 465 (1998)("[t]he court finds that section 1997e(a), as amended, applies to Braun's post-PLRA amended complaint and, therefore, requires him to exhaust all available administrative remedies").

**"Availability" of Administrative Remedies**

■ Plaintiff also asserts that the PLRA's exhaustion requirement does not apply because there are no administrative remedies available to him. At the time the instant action was commenced, Plaintiff was "only seeking redress in the form of monetary damages ..." (Pl. Opp. Br. at 14).[8] As to the monetary damages portion of Plaintiff's claim, "the clear trend among district courts in the Southern District of New York is to find exhaustion applicable even where the requested relief, money damages, cannot be awarded by the administrative body hearing the complaint." *Santiago v. Meinsen,* 2000 WL 223830 at *5 (S.D.N.Y. Feb. 25, 2000). *See also Perez,* 182 F.3d at 537 (" § 1997e(a) does not require the prison to use the prisoner's preferred remedy"); *Alexander,* 159 F.3d at 1326 ("the term 'available' in section

---

sons.' ... Congress found that the number of prisoner lawsuits 'has grown astronomically—from 6,600 in 1975 to more than 39,000 in 1994.' ... Indeed, by 1995 more than twenty-five percent of the suits filed in federal district court were brought by prisoners." *Alexander,* 159 F.3d at 1324 (citations omitted).

7. Plaintiff further contends that he should not be subject to the PLRA exhaustion requirement because, in Beatty I, Judge Cote did not advise him that he would have to exhaust his administrative remedies prior to filing a new

lawsuit. Plaintiff cites no authority for the proposition that Judge Cote had a duty to inform him that he would be subject to the PLRA's exhaustion requirement prior to filing any new lawsuit. (At the time that Judge Cote issued her Opinion in Beatty I, Plaintiff was represented by attorney Michael Lumar).

8. As noted, Plaintiff is now seeking "actual and punitive damages against defendants Kapoor, Maw and Wright" and injunctive relief against defendants Goord and Lofton. (Complaint at 11).

1997e(a) is used to acknowledge that not all prisons actually have administrative remedy programs").[9]

The arguments in favor of PLRA exhaustion are, if anything, more compelling here because Plaintiff is also seeking injunctive relief. *See Nyhuis v. Reno*, 204 F.3d 65, 70 (3d Cir.2000)("[n]o court of appeals interpreting the PLRA has recognized a futility exception to [§ ] 1997e(a)'s exhaustion requirement in a mixed claim case"). Even those courts that have held that the PLRA exhaustion requirement is inapplicable when an inmate is seeking exclusively monetary damages, have held that PLRA exhaustion is required when an inmate seeks both monetary and injunctive relief. *See Whitley v. Hunt*, 158 F.3d 882, 887 (5th Cir.1998)("a state prisoner's mixed petition for both monetary and injunctive relief is subject to § 1997e's exhaustion requirement"). Indeed, Sing Sing's grievance procedures may very well be able to address if not resolve Plaintiff's requests for additional urological care without the need for Federal injunctive remedies.

There are a number of important reasons which support exhaustion of administrative remedies. First, an exhaustion requirement "better serves the policy of granting an agency the 'opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.'" *Beeson*, 28 F.Supp.2d at 895 (citation omitted). Second, an exhaustion requirement "better avoids the possibility that frequent and deliberate flouting of [prison] administrative processes could weaken the effectiveness of [those prisons] by encouraging people to ignore [their] procedures." *Id.* (citing *Kobleur v. Group Hospitalization & Med. Servs., Inc.*, 954 F.2d 705, 712 (11th Cir.1992))(quotations omitted). Third, an exhaustion requirement "promotes judicial efficiency." *Beeson*, 28 F.Supp.2d at 895. Fourth, even if no relief is granted, "a prisoner's resort to the administrative process is not futile, but allows grievances to be heard and a record to be created for review in any subsequent proceeding." *Alexander*, 159 F.3d at 1327. *See also Beeson*, 28 F.Supp.2d at 895 ("[t]he administrative process can serve to focus and clarify the issues for a court

---

9. *Compare, e.g., Beeson*, 28 F.Supp.2d at 896 (S.D.N.Y.1998)("Congress, in enacting the PLRA, applied the exhaustion requirement to all actions brought by prisoners with respect to prison conditions ... regardless of what relief is sought"), *and Nyhuis*, 204 F.3d 65, 66–67 ("we hold that the PLRA amended [§ ] 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory—whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action"), *and Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 538 (7th Cir.1999)("we hold that pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks"), *with Rumbles v. Hill*, 182 F.3d 1064, 1069 (9th Cir.1999), *cert. denied*, 528 U.S. 1074, 120 S.Ct. 787, 145 L.Ed.2d 664 (2000)("[e]xhaustion of administrative remedies under section 1997e(a) is not required if a prisoner's section 1983 claim

seeks only money damages and if the correctional facility's administrative grievance process does not allow for such an award")(emphasis added), *and Garrett v. Hawk*, 127 F.3d 1263, 1267 (10th Cir.1997)("we must conclude that no exhaustion of administrative remedies is required under PLRA in this case because no such remedies exist to be exhausted").

While the question remains undecided by the Court of Appeals for the Second Circuit, it has said, in dicta, "[w]e note that it is far from certain that the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to deliberate indifference claims in the context of the instant one, under § 1983, where the relief requested is monetary and where the administrative appeal, even if decided for the complainant, could not result in a monetary award." *Snider v. Dylag*, 188 F.3d 51, 55 (2d Cir.1999).

... ").[10]

Thus, the Court here is persuaded that the PLRA exhaustion requirement applies to Plaintiff's claims—all the more so because of Plaintiff's request for an injunctive remedy. Indeed, "[t]o hold otherwise would frustrate congressional intent as the exhaustion requirement could be easily bypassed by inmates simply by adding a claim for monetary relief." *Santiago*, 89 F.Supp.2d at 440 (citation omitted). *See also Beeson*, 28 F.Supp.2d at 893 ("exempting [claims for monetary damages] would enable prisoners to evade the exhaustion requirement easily, merely by including a request for monetary damages in their complaints"); *Perez*, 182 F.3d at 537 ("[s]ection 1997e would not be worth much if prisoners could evade it simply by asking for relief that the administrative process is unable to provide").[11]

**Plaintiff Must Comply with Formal Grievance Procedures**

█ Plaintiff also claims that, although he elected not to utilize the formal grievance procedures available at Sing Sing, he "effectively grieve[d] his complaints in a timely fashion to the appropriate prison officials" by writing letters to Dr. Kapoor, who was then the Medical Director at Sing Sing; John P. Keane, who was then the Superintendent of Sing Sing; and Phillip Coombe, the Acting Commissioner of DOCS. (Pl. Opp. Br. at 13–14). This was not sufficient to comply with the Inmate Grievance Program. *See Santiago*, at 439 ("New York State has procedures for filing grievances in each of its correctional facilities"). Under the Inmate Grievance Pro-

gram, "[a]n inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ..." 7 N.Y.Comp.Codes R. & Regs., tit. 7, § 701.7(a)(1). *See also Santiago*, at 435 (plaintiff "was required to submit a complaint to the Grievance Clerk within fourteen days of the alleged incident").

Here, it is undisputed that Plaintiff was aware of the formal grievance procedures available at both Sing Sing and Green Haven. **Indeed, he had filed grievances at both places in the past.** (Defendants' Rule 56.1 Statement at ¶ 14)(Plaintiff's Rule 56.1 Statement at ¶ 14). In his affidavit, Sean Kober, ("Kober"), the current Inmate Grievance Supervisor at Sing Sing, stated that "[p]laintiff filed one grievance at Sing Sing. It did not relate to urology or claimed lack of medical treatment or care by the medical staff." (Kober Aff. at ¶ 5). Plaintiff "has never filed a grievance relating to any events surrounding his urological medical care or treatment, or concerning his urological condition. Further, no grievances have been filed alleging neglect, indifference, or lack of care by Doctors Maw, Kapoor, Wright, or Lofton, nor Commissioner Goord." (Kober Aff. at ¶ 8).

The PLRA exhaustion requirement is useful "because prisoners will be forced to report their complaints to prison officials promptly or risk forfeiture of their claims, strict adherence to the PLRA's exhaustion requirement will likely result in a more efficient grievance procedure and, as a consequence, lead to the improvement of prison conditions." *Beeson*, 28 F.Supp.2d

---

**10.** "[A]dditional federalism and efficiency considerations are implicated when reviewing [§ ] 1983 actions ... because of the greater difficulty federal courts may have in interpreting and/or predicting the contours of state law and state administrative regulations and practices." *Booth v. Churner, C.O.*, 206 F.3d 289, 299 (3d Cir.2000).

**11.** "There is no futility exception to § 1997e(a)." *Perez*, 182 F.3d at 537. *See also Alexander*, 159 F.3d at 1325 ("the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA").

at 895. Permitting Plaintiff to bypass the Inmate Grievance Program, as he chooses, would undermine the (important) objective of creating an efficient and effective prison grievance mechanism.[12] *Cf. Santiago*, at 435 (finding that plaintiff failed to exhaust administrative remedies because "he did not pursue his claim with the appropriate grievance committee" pursuant to the Inmate Grievance Program); *McCoy v. D. Scott*, 1997 WL 414185 at *2 (N.D.Cal. July 15, 1997)("the court finds that [plaintiff] has failed to allege exhaustion of all available administrative remedies; that is, that he pursued his claim all the way through the third level of review" pursuant to the California Code of Regulations).

Accordingly, Plaintiff's complaint is dismissed (without prejudice) for failure to exhaust available administrative remedies pursuant to the PLRA. As a prerequisite to re-filing this case in Federal court, Plaintiff is directed to file and pursue a grievance pursuant to the Inmate Grievance Program. The Court notes that, while an inmate must ordinarily submit a complaint to the Grievance Clerk within fourteen (14) calendar days of an alleged occurrence, "[e]xceptions to this time limit may be approved by the IGP [Inmate Grievance Program] supervisor based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, referrals back to the IGP by the courts, etc.)." N.Y.Comp.Codes R. & Regs. tit. 7, § 701.7(a)(1).

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [14–1] is granted and Plaintiff's complaint is dismissed **without prejudice.** The Clerk is respectfully directed to close this case.

---

12. *But see, e.g., Wyatt v. Leonard*, 193 F.3d 876, 880 (6th Cir.1999)( [a]lthough plaintiff's own list of contacts with prison officials, which he submitted to the district court, makes clear that plaintiff did not follow precisely the requisite procedures for bringing his complaint to the attention of the appropriate person, he has substantially complied with the exhaustion requirement by giving written notice on several occasions to prison officials).