John HEMPHILL, Plaintiff,

v.

State of NEW YORK, Jerry W. Surber, William E. Kelly, Daniel J. Gunderman, Carola Straley, Matthew C. Miller, Thomas W. Boss, William F. Keyser, and R.J. Williams, Defendants.

No. 98CIV.6714 (CM)(LMS).

United States District Court, S.D. New York.

April 19, 2002.

John Hemphill, Stormville, NY, Pro se.

Kimberly Ann Dasse, Asst. Atty. Gen., New York City, for Defendants.

## DECISION AND ORDER DISMISSING COMPLAINT

MCMAHON, District Judge.

John Hemphill, plaintiff pro se, brought this action to redress alleged violations of his Constitutional rights resulting from a beat down while incarcerated at Green Haven Correctional Facility. Summary judgment motions made by defendants were granted in part and denied in part. On the eve of trial on Hemphill's one remaining claim—an Eighth Amendment Claim for alleged use of excessive force—the United States Supreme Court handed down its decision in *Porter v. Nussle,* 534 U.S. 516, ——, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002). *Porter* worked a significant change in Second Circuit law on the exhaustion of administrative remedies in suits brought subsequent to the passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Prior to *Porter,* the Court of Appeals had ruled that claims like plaintiff's which were singular to him, did not relate to "prison conditions" and were thus not subject to the PLRA's exhaustion requirement. In *Porter,* the Supreme Court declared that this was not so, and that claims of every sort relating to prison life—including claims for excessive force against an individual inmate—had to be exhausted before an action could be commenced in this Court pursuant to 42 U.S.C. § 1983. This Court immediately received and granted the State's request that I consider a further summary judgment motion. I have done so, and I now grant the motion dismissing plaintiff's excessive force claim and direct the Clerk of the Court to close this case.

■ The State moves for dismissal on the ground that Hemphill never filed a grievance following the alleged beat down that occurred on November 28, 1997. He did write a letter to Superintendent Artuz regarding the incident on April 16, 1998. Hemphill contends that I should deem this letter to have been a grievance for administrative exhaustion purposes. I cannot do so.

The New York State Department of Correctional Services (DOCS) has a well-documented grievance procedure. It consists of three levels. The first is the filing of a complaint with the facility's Inmate Grievance Review Committee. The second is an appeal to the facility superintendent. The final level is an appeal to the DOCS Central Office Review Committee in Albany. Eagen Aff. ¶ 4. A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure.

On the undisputed record before me, plaintiff has failed to exhaust. He admits that he never filed a Level 1 Grievance. (Dasse Aff.Ex. A) His letter to Superintendent Artuz cannot be considered a Level 2 appeal, because he had never filed a grievance that could be heard at the lowest level. And he never petitioned the Central Office Review Committee at Level 3. (Eagen Aff. ¶ 10) Thus, he has not exhausted his administrative remedies.

■ Plaintiff cannot be heard to complain that Superintendent Artuz did nothing in response to his April 1998 letter, because Plaintiff also failed to follow the expedited grievance procedure that prisoners are afforded when they are alleging any form of harassment—including use of excessive force—by a corrections officer. 7 N.Y.C.R.R.Pt. 701.11(a) and (b). Under this expedited procedure, a grievance is filed with both the Inmate Committee and the harassing employee's supervisor. If the grievance raises a bona fide harassment issue (as this one would have), Level 1 review is bypassed and the matter is sent directly to the Superintendent for review. Had plaintiff utilized this procedure, any failure by Artuz to render a decision on his matter within twelve working days could have been appealed to Albany, thus completing the grievance cycle and exhausting his remedies in a matter of weeks.

■ Prison officials are entitled to require strict compliance with an existing grievance procedure. Plaintiff never filed a grievance with Green Haven's Inmate Grievance Review Committee, so Artuz had no authority to act on his letter. It is for this reason that a letter to the Superintendent has been expressly held to be "insufficient" to warrant considering a matter "effectively grieved." *Beatty v. Goord*, 2000 WL 288358 *4, 2000 U.S.Dist. LEXIS 3210 * 13 (S.D.N.Y. March 16,

2000). The remedies afforded an aggrieved prisoner are clear, and prisoners have no authority or ability to invent their own grievance procedures. This Court certainly has no warrant to substitute its own grievance procedure for the one that has been made available by DOCS.

■ Finally, assuming arguendo that plaintiff's letter could be interpreted as a grievance, it was untimely, since plaintiff did not send it until almost five months after the incident. Under existing procedures, untimely grievances will not be considered unless the grievant files an application for an extension of time, explaining why it was untimely and seeking consideration of the matter out of time. Hemphill followed no such procedure.

In short, for myriad reasons, I am forced to conclude that Hemphill failed to grieve his claim. That ends this lawsuit.

Hemphill asks that I either deem the exhaustion argument waived or that I decline to apply it retroactively to his case. I cannot grant the relief he seeks.

■ Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them. *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998). Congress has spoken on the question of exhaustion by prisoners prior to the commencement of civil rights actions; it is, therefore, beyond this court's power to waive that requirement for any allegedly equitable reason. *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992).

■ Under the firm rule of retroactivity, I must refuse plaintiff's invitation not to apply Porter in his case. The result is harsh, because the statute of limitations has run and were plaintiff to attempt to exhaust today (an effort that would by no means be automatically permitted), any

complaint he might file would be untimely and would have to be dismissed. Thus, by failing to exhaust in the first instance, plaintiff has lost any redress for the allegedly unconstitutional attack on his person.

 However, it is not, as plaintiff urges, unconstitutional to apply the *Porter* rule retroactively.[1] It is quite common to apply a new decision retroactively, without consideration of the equities in the matter. Indeed, it is the rule to do so, not the exception. *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). In any event, the equities here would not favor Hemphill. The PLRA was passed in 1996—a year before plaintiff's claim accrued. The clear text of the new statute mandated exhaustion prior to the commencement of any lawsuit concerning "prison conditions." The Second Circuit decisions declaring that the PLRA's exhaustion requirement did not apply in cases where, as here, the plaintiff alleged a particular injury, such as the use of excessive force on him personally, were not handed down until well after the time when Petitioner failed to file a timely grievance (late 1997 or early 1998). *See, e.g., Lawrence v. Goord,* 238 F.3d 182 (2d Cir.2001) (inmates not required to exhaust administrative remedies before bringing action for particular, individualized instances of retaliation), *vacated by, Goord v. Lawrence,* —— U.S. ——, 122 S.Ct. 1200, 152 L.Ed.2d 139 (2002); *Nussle v. Willette,* 224 F.3d 95 (2d Cir.2000); *Snider v. Dylag,* 188 F.3d 51, 55 (2d Cir.1999) (calling it "far from certain" that the PLRA exhaustion requirement applies where the relief requested in monetary); *Liner v. Goord,* 196 F.3d 132 (2d Cir.1999)

(noting a split in circuits and district courts on this issue, and declining to rule on it). Thus, plaintiff could not possibly have relied on those decisions. Since reliance on the Second Circuit's interpretation of the PLRA would be the only possible factor that might augur in favor of non-retroactive application of the Supreme Court's decision, there is no equitable basis to evade the firm rule of retroactivity.

Defendants' motion for summary judgment is granted, and the case is dismissed in its entirety. The Clerk is directed to close the file.

---

**1.** In particular, doing so is not the equivalent of an *ex post facto* law. The *ex post facto* principle enshrined in the Constitution applies only to legislative action that retroactively punishes as a crime an act committed at a time when it was not a crime.