**Mark LABOUNTY, Plaintiff,**

v.

**Sally B. JOHNSON, et al., Defendants.**

**No. 99–CV–6353L.**

United States District Court, W.D. New York.

March 27, 2003.

Mark LaBounty, Gowanda, NY, Pro se.

Charles D. Steinman, New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff, Mark LaBounty ("plaintiff"), an inmate incarcerated at the Collins Correctional Facility, brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights at Orleans and Collins Correctional Facilities ("Orleans" and "Collins"). For his first claim, plaintiff asserts that Orleans personnel failed to take steps to protect him from other inmates after correctional officers identified him as a gang member, in violation of his Eighth and Fourteenth Amendment rights. In his second claim, plaintiff alleges that certain correctional officers at Collins retaliated against him by identifying him as a gang member after he successfully pursued a grievance against the officers, in violation of his First Amendment rights.

Defendants move for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), and the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Plaintiff argues that he sufficiently exhausted his administrative remedies, or was prevented from doing so by the correctional facility staff. Plaintiff also argues that *Nussle* should not be applied retroactively.

For the reasons that follow, defendants' motion for summary judgment is granted as to the first claim because I find that

**498**

plaintiff has failed to exhaust his administrative remedies. However, defendants' motion is denied as to the second claim because issues of fact exist regarding whether the defendants' conduct precluded plaintiff from exhausting his remedies.

## DISCUSSION

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000) (quotations omitted). Where, as here, the plaintiff is proceeding *pro se*, the court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999) (quotations omitted). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" *Rodriguez v. Ames*, 224 F.Supp.2d 555, 559 (W.D.N.Y.2002), *quoting Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y.2002).

The PLRA provides at 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In New York State, those remedies consist of a three-step review process. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. The IGRC's decision can be appealed to the superintendent of the facility, and the superintendent's decision can be appealed to the Central Office Review Committee ("CORC"), which makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. At each step, there are time limits within which the grievance or appeal must be decided, and "matters not decided within the time limits [prescribed by the regulations] may be appealed to the next step." 7 N.Y.C.R.R. § 701.8. Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Santos v. Hauck*, 242 F.Supp.2d 257 (W.D.N.Y.2003).

Prior to the Supreme Court's decision in *Porter v. Nussle*, the law in the Second Circuit was that the PLRA's exhaustion requirement did not apply to claims pertaining to isolated incidents affecting particular inmates. *See Nussle v. Willette*, 224 F.3d 95 (2d Cir.2000). In *Nussle*, however, the Supreme Court held that " § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Nussle*, 534 U.S. at 520, 122 S.Ct. 983. The rule in *Nussle* extends to claims for retaliation by correction officers. *Lawrence v. Goord*, 304 F.3d 198, 199–200 (2d Cir.2002) ("retaliation claim fits within the category of 'inmate suits about prison life,' and therefore must be preceded by the exhaustion of state administrative remedies").

Defendants argue that they are entitled to summary judgment because plaintiff did not satisfy the third level of the exhaustion requirement that requires filing an appeal

with the CORC. In support of their motion, defendants submitted the affidavit of Thomas G. Eagen, the Director of the Inmate Grievance Program for the Department of Correctional Services. Dkt. # 56. Eagen supervises the maintenance of grievance records and conducted a search of the CORC appeal records. He found no "record or indication" that plaintiff filed any appeals from the denial of any grievances concerning his identification as a gang member by the staff at Orleans or Collins. Nor did Eagen find an appeal from the denial of the grievance related to the failure of Johnson and Gilbert to protect him at Orleans. *Id.* at ¶¶ 6–7.

Plaintiff makes numerous arguments in opposition to defendants' motion. First, plaintiff argues that defendants waived their right to raise the exhaustion issue at this stage of the case. However, "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002); *see also Bastek v. Fed. Crop Ins. Corp.,* 145 F.3d 90, 94 (2d Cir.1998). Because Congress specifically mandated that all prisoners exhaust their administrative remedies prior to bringing suit, *Nussle,* 534 U.S. at 524, 122 S.Ct. 983, this Court lacks the authority to waive that requirement. *Hemphill,* 198 F.Supp.2d at 549. In any event, it appears that defendants moved for summary judgment on the exhaustion issue solely on the basis of the Supreme Court's decision in *Nussle.* Defendants filed their motion within four months of the decision. Therefore, even if the Court could waive the exhaustion requirements, there is nothing in the record to indicate that defendants delayed filing the motion or engaged in litigation tactics to warrant that equitable remedy.

Plaintiff also contends that the Court should not apply *Nussle* retroactively because his action was filed before the Supreme Court's decision. Plaintiff argues he was entitled to rely on the law as it existed in the Second Circuit at the time his claim accrued. However, courts in this Circuit have repeatedly rejected this argument and held that claims filed prior to the Court's decision in *Nussle* must meet the exhaustion requirements. *See Santos v. Hauck,* 242 F.Supp.2d 257 (W.D.N.Y.2003) (collecting cases); *Khalild v. Reda,* No. 00 Civ. 7691, 2003 WL 42145 (S.D.N.Y. Jan. 23, 2003); *White v. New York,* No. 00 Civ. 3434, 2002 WL 31235713, *2 (S.D.N.Y. Oct. 3, 2002) ("Courts in this Circuit have consistently applied [*Nussle* ] retroactively"); *Hemphill,* 198 F.Supp.2d at 550. For the same reasons articulated in *Hemphill,* I find nothing peculiar about plaintiff's claims or the circumstances here that requires departure from the rule requiring the retroactive application of *Nussle. See Hemphill,* 198 F.Supp.2d at 550.

Having found no equitable reason to deny defendants' motion, the Court must examine the steps plaintiff took to exhaust his claims and determine whether they meet the three step exhaustion requirements of the PLRA.

### A. Plaintiff's first claim against the Orleans defendants

■ For his first claim, plaintiff alleges violations of his Eighth and Fourteenth Amendment rights. He asserts that correctional officers at Orleans falsely identified him as a member of the gang "Bloods" to other inmates, thereby putting his life in danger. Plaintiff claims that he complained to defendants Sally B. Johnson, the Superintendent of Orleans, and Captain Kirk Gilbert, but they failed to take steps to protect him. As a result, he was cut with a weapon by other inmates on

June 25, 1998, and suffered physical injury. Dkt. # 1, ¶ 5.A.[1]

Plaintiff does not allege that he complied with the requirements of 7 N.Y.C.R.R. § 701.7 for inmate grievances by filing a complaint with the Grievance Clerk at Orleans, appealing to the Superintendent, or appealing to CORC. Instead, in an affidavit submitted in response to defendants' motion, plaintiff claims that, prior to his attack, he complained in person and in writing to Johnson and Gilbert that he was wrongfully identified as a member of the gang and requested protective custody. Plaintiff then asserts that his "complaint was then sent to Albany," but the "Commissioner referred plaintiff back to defendant Johnson at Orleans." Dkt. # 63, ¶ 3. Plaintiff was then attacked by other inmates and placed in the Special Housing Unit until his transfer to Collins in September 1998.

These allegations are insufficient to overcome the defendants' showing that plaintiff never filed an appeal with the CORC regarding his failure to exhaust claim. According plaintiff every favorable inference, it appears that he may have taken certain steps informally with Johnson and Gilbert to resolve a grievance that he had been improperly named as a gang member. However, he never filed a written grievance with the IGRC that Johnson and Gilbert failed to take steps to protect him. Nor does plaintiff allege that he appealed to Johnson from any IGRC determination, or took an appeal to the CORC regarding such a claim. Instead, it appears he attempted to by-pass both the initial IGRC resolution process and first level appeal, and went directly "to Albany." [2] Plaintiff alleges that Albany returned his appeal and directed him instead back to Johnson. This procedure is consistent with the regulations that require that the other steps be exhausted before an appeal is taken. Plaintiff took no further steps to exhaust his remedies in accordance with § 701.7.

Plaintiff's efforts were insufficient as a matter of law to exhaust his claims in accordance with the PLRA. *Santos,* 242 F.Supp.2d at 257 (plaintiff who filed only initial grievance did not exhaust his administrative remedies); *Reyes v. Punzal,* 206 F.Supp.2d 431, 434 (W.D.N.Y.2002) (inmate failed to show that he went beyond first steps of exhaustion requirement requiring dismissal of his claims); *Houze v. Segarra,* 217 F.Supp.2d 394, 395–96 (S.D.N.Y.2002) (plaintiff who wrote to the Superintendent of the facility and took other informal steps to grieve his complaint did not properly initiate the harassment grievance procedure); *Kearsey v. Williams,* No. 99 Civ. 8646, 2002 WL 1268014, *2 (S.D.N.Y. June 6, 2002) (exhaustion requirement not met where plaintiff did not complete appeals process); *Waters v. Schneider,* No. 01 Civ. 5217, 2002 WL 727025, *2 (S.D.N.Y. Apr. 23, 2002) (same).

Moreover, the fact that plaintiff took some steps to exhaust does not save his

---

**1.** Plaintiff also alleges that after being cut, he was placed in the Special Housing Unit and that defendant Nelson Wright took and destroyed "plaintiff's legal papers and books, for the second time, to prevent and imped (sic) plaintiff's access to the Court . . . ." *Id.* Defendant Wright is named as a party in the complaint. However, it does not appear that he was ever served with process and to date he has not appeared in the action.

**2.** It is unclear whether plaintiff is referring to the CORC when he states that he sent the appeal "to Albany." According plaintiff every favorable inference and interpreting plaintiff's pleadings as raising the strongest argument suggested, *Corcoran,* 202 F.3d at 536, the court assumes plaintiff sent his appeal to the CORC.

claim. *See Indelicato v. Suarez*, 207 F.Supp.2d 216 (S.D.N.Y.2002) (even where inmate makes some efforts to grieve his claim, his failure to avail himself of all available processes required finding that he did exhaust his claims); *Nunez v. Goord*, 172 F.Supp.2d 417, 428 (S.D.N.Y. 2001) (writing letter to Superintendent alleging a failure to protect claim is insufficient to satisfy exhaustion requirement); *Beatty v. Goord*, 210 F.Supp.2d 250, 255–56 (S.D.N.Y.2000) ("writing letters to ... the Superintendent ... [is] not sufficient to comply with the Inmate Grievance Program").[3]

Additionally, after the incident, plaintiff does not allege that he filed a grievance against Johnson or Gilbert charging that their failure to protect him from other inmates resulted in his being injured. Nor does plaintiff claim that he filed either a level two or level three appeal on that issue. Instead, plaintiff alleges in his complaint that, after the incident, other administrative processes began that had the effect of exhausting his administrative remedies. Plaintiff refers to a misbehavior report filed against him. After the incident, plaintiff was charged with a Tier 3 misbehavior violation for allegedly failing to report the attack to prison officials. Plaintiff appealed to Albany after the hearing on the misbehavior report. On appeal, the hearing disposition was re-versed and the report was expunged from plaintiff's record. Attached to plaintiff's complaint are two documents that show that the hearing on the misbehavior report was reversed. However, no explanation was given for the reversal.[4]

Plaintiff claims that his appeal on the report was sufficient to exhaust his administrative remedies regarding the underlying grievance that defendants Johnson and Gilbert failed to protect him. *Id.* at ¶ 5.A. I disagree. Plaintiff cannot effectively exhaust his administrative remedies for this claim by using the Tier III misbehavior hearing and appeal process. An appeal from a disciplinary hearing does not satis-fy the grievance exhaustion requirement for an Eighth Amendment claim, even if the hearing is based on the same set of facts underlying the grievance. *See McNair v. Sgt. Jones*, No. 01 Civ. 3253, 2002 WL 31082948, *7 (S.D.N.Y. Sept. 18, 2002) (dismissing § 1983 where plaintiff failed to exhaust administrative remedies despite having appealed from disciplinary hearing on the same facts alleged in support of his excessive force claim); *Benjamin v. Goord*, No. 02 Civ. 1703, 2002 WL 1586880, *2 (S.D.N.Y. July 17, 2002) ("exhausting appeals of a disciplinary hearing determination does not constitute exhausting administrative remedies for his griev-ance, even if the underlying facts are the

---

**3.** Assuming plaintiff attempted to comply with the procedures set forth in 7 N.Y.C.R.R. § 701.11 for harassment, plaintiff does not allege that he filed a notice of decision to appeal with the IGP clerk following the Superintendent's decision on his complaint. Therefore, under this procedure, his efforts were insufficient as well. *See* 7 N.Y.C.R.R. § 701.11(5) and (6); *Houze*, 217 F.Supp.2d at 395–96.

**4.** One document is a memorandum from Orleans to plaintiff dated August 31, 1998, enti-tled "reversal of Tier III," which states that plaintiff had a Tier III hearing in which he was charged with an "unreported illness." The memorandum states "effective this date your disposition for the above mentioned hearing is reversed. This hearing will be expunged from your record." Dkt. # 1, Ex. A. Also attached to the complaint is an undat-ed letter from the Director of Special Housing of the Inmate Disciplinary Program, Donald Selsky, in Albany, which states that "on be-half of the Commissioner and in response to your recent letter of appeal, please be advised that your Superintendent's hearing of July 1, 1998 has been received and reversed on Au-gust 28, 1998."

same."), *citing Cherry v. Selsky,* No. 99 Civ. 4636, 2000 WL 943436, *7 (S.D.N.Y. July 7, 2000). Therefore, whatever plaintiff may have done with respect to his misbehavior appeal is of no consequence here, even if it was somehow related to his allegations that Johnson and Gilbert failed to protect him.[5]

Plaintiff also claims that he was placed in the Special Housing Unit ("SHU") for a number of months after the incident and could not complete the requirements for exhaustion. However, there is a procedure set forth in 7 N.Y.C.R.R. 701.13 for inmates in the SHU. Plaintiff does not assert that he attempted to take advantage of these processes or was otherwise prevented from doing so by prison officials. Therefore, any claim that his confinement to the SHU prevented him from exhausting his claims must be rejected.

Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's first claim against the Orleans defendants because plaintiff failed to exhaust his administrative remedies in accordance with the PLRA.

### B. Plaintiff's second claim against the Collins defendants

■ Plaintiff alleges in his second claim that in March 1999, while an inmate at Collins, Richard Becker and Victor Herbert falsely identified him as a gang member in retaliation for plaintiff having filed a successful grievance regarding his participation in a sex offender program.[6] Plaintiff alleges in his complaint that he exhausted his administrative remedies, but does not specify in what way he accomplished that requirement. Attached to his complaint are two documents that show that plaintiff filed a grievance related to this claim with the IGRC on March 29, 1999. The IGRC determined that the grievance was without merit. *See* Dkt. # 1, Exhibit A–2, Grievance No. Col–3816–99. Plaintiff then appealed the grievance to the Superintendent on April 3, 1999. On April 22, 1999, the Superintendent denied the grievance. Therefore, plaintiff completed the first two steps of the exhaustion process. However, there is nothing attached to the complaint to indicate that plaintiff filed an appeal with the CORC, and plaintiff makes no allegation that he did so.

Instead, plaintiff contends that he was precluded by the staff at Collins from appealing to the CORC in two different ways. First, he claims that his grievance was consolidated under another inmate's name and that he was confused by the

---

**5.** There are limited exceptions to this general rule, such as when an inmate files a § 1983 claim based on a violation of his due process rights in connection with the disciplinary hearing. An appeal from that hearing that raises the precise procedural infirmities may be sufficient to exhaust the grievance procedure as well. *See Flanagan v. Maly,* 99 Civ. 12336, 2002 WL 122921, *2 (S.D.N.Y. Jan. 29, 2002) ("once the alleged deprivation of rights has been approved at the highest level of the state correctional department to which an appeal is authorized, resort to additional internal grievance mechanisms would be pointless."). However, plaintiff does not allege a due process violation, but an Eighth Amendment failure to protect claim. Under

these circumstances, the exception found in *Flanagan* does not apply here.

**6.** This Court previously granted in part the Collins defendants' motion to dismiss, by dismissing that portion of plaintiff's claim seeking damages for being identified by Becker and Meegan as a gang member because plaintiff failed to allege he suffered any physical injury as a result. *See* Dkt. # 48. What remains is a First Amendment retaliation claim against the Collins defendants. Therefore, the Court's discussion regarding the exhaustion requirement is limited to determining whether this portion of the second claim was properly exhausted pursuant to the PLRA.

Superintendent's decision, a fact that is supported by the record. The Superintendent's decision denying the appeal shows that plaintiff's grievance was consolidated under the name "Medina, F. & Others." The Superintendent's decision was still assigned the number of plaintiff's initial grievance, Col–3816–99. However, it makes no reference to gang identification. Instead, it states that the "[m]onitoring of all inmates is an on-going process with the goal of providing a safe and secure environment for all inmates and staff. Appropriate behavior and conduct on the part of the inmate will insure that he experiences no difficulties. Grievance is denied." *See* Dkt. # 1, Exhibit A–2, Grievance No. Col–3816–99. Plaintiff claims that he "had no knowledge of what this named person's grievance stated nor any facts regarding him or his background, plaintiff did not know who the named person was, and plaintiff was effectively procluded (sic) from exercising his right to a meaningful appeal of his grievance." Dkt. # 2, ¶ 2.

According to 7 N.Y.C.R.R. § 701.7(2), "like grievances" may be consolidated at the option of the IGP Supervisor or the IGRC. Pursuant to § 701.7(2)(ii), "a list including the name of every inmate who submitted a complaint on the issue shall be included with the grievance materials and submitted with any appeal which may result." Subdivision (2)(iii) provides that "[a]n effort will be made to notify all such grievants of the response at each level, either by written response, posting on the inmate bulletin boards or radio announcement, however, the grievant of record will receive a written response from each level." If the grievant of a consolidated grievance wishes to appeal, he can do so irrespective of whether the grievant of record appeals. 7 N.Y.C.R.R. § 701.7(2)(iv). Lastly, subsection (2)(v) provides that "[a]ny inmate on the list of those submitting a complaint should be given the griev-ance calendar number of the grievance of record to submit to the court in order to verify exhaustion of the IGP." 7 N.Y.C.R.R. § 701.7(2)(v).

The staff at Collins acted in accordance with the regulations by consolidating plaintiff's grievance with other like grievances. However, it is not clear that the Collins staff followed all of the relevant procedures as required by § 701.7(2). For instance, it is unclear whether plaintiff was made aware of the fact that his grievance was consolidated with Medina's, or whether a list of names accompanied the Superintendent's decision. Therefore, the Court cannot discern from the record before it whether it was reasonable for plaintiff to be confused under such circumstances. There is no dispute that the plaintiff was familiar with the grievance process, having successfully filed a grievance and appealed it both to the Superintendent and the CORC regarding his participation in the sex offender program. *See* Dkt. # 1, Exhibit B. Therefore, it seems odd that the plaintiff, who had just successfully completed the grievance process through the appellate level, would not file an appeal if he had been aware of the Superintendent's decision denying his grievance.

In addition, the Court is persuaded by a second argument that plaintiff makes regarding his failure to appeal to the CORC. According to plaintiff, the grievance supervisor at Collins prevented him from effectively appealing to the CORC. *Id.* at ¶¶ 4–5. Where an inmate alleges that his attempts to comply with the appeal process were hampered by the defendants' conduct, dismissal is not warranted. *See O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085 (S.D.N.Y. Apr. 29, 2002); *Evans v. Nassau Co.,* 184 F.Supp.2d 238, 245 (E.D.N.Y.2002); *Rodriguez v. Hahn,* 99 Civ. 11663, 2000 WL 1738424, *2 (S.D.N.Y. Nov. 22, 2000); *see also Miller*

v. *Norris,* 247 F.3d 736, 740 (8th Cir.2001) (holding that an administrative "remedy" is not "available" under the PLRA where prison officials prevented a prisoner from "utilizing" those remedies).

While the facts asserted by the plaintiff in this regard are somewhat confusing, he appears to claim that he attempted to comply with the exhaustion procedures set forth in 7 N.Y.C.R.R. § 701.11. That provision relates to claims of employee harassment meant "to annoy, intimidate, or harm an inmate," and requires that the Superintendent promptly determine whether the grievance, if true, would represent a "bona fide case of harassment." 7 N.Y.C.R.R. § 701.11(b)(3). The Superintendent must respond to the grievance within twelve days of its receipt. 7 N.Y.C.R.R. § 701.11(b)(5). If the Superintendent fails to respond within the required time, plaintiff may appeal his grievance to the CORC by filing a notice of decision to appeal with the IGP clerk. 7 N.Y.C.R.R. § 701.11(b)(6).

Plaintiff claims that after a "long delay" in receiving a response from the Superintendent, he mailed a written complaint directly to the CORC. The CORC, however, returned the grievance because it was not forwarded to it by the grievance supervisor. Plaintiff contends that he asked the grievance supervisor to follow-up on his grievance, but because the supervisor's boss is one of the individuals against whom plaintiff complained, that supervisor never responded to plaintiff's request. Dkt. # 63. The record does not indicate whether plaintiff's attempt to contact the CORC directly occurred before or after the plaintiff received the Superintendent's decision on the consolidated grievance.

Whether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law. *Snider v. Melindez,* 199 F.3d 108, 113–14 (2d Cir.1999). Based on the record before the Court, that determination cannot be made at this time. The defendants did not file any reply papers and do not address plaintiff's allegations regarding his attempt to exhaust his administrative remedies. The failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense on which defendant bears the burden of proof. *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999). The record as it exists at this time contains conflicting accounts regarding plaintiff's efforts to complete the exhaustion process. Given that the Court must draw all reasonable inferences in plaintiff's favor, the Court must deny the defendants' motion for summary judgment at this time. *Croswell v. McCoy,* No. 9:01 Civ. 00547, 2003 WL 962534, *4 (N.D.N.Y. Mar. 11, 2003) (denying summary judgment on issue of exhaustion where the record was unclear regarding the efforts plaintiff took to exhaust his remedies).

Moreover, it is not certain whether plaintiff has had discovery on this issue yet. In fact, plaintiff claims that defendants' motion should be denied because he needs to conduct discovery on his efforts to exhaust his claims. Dkt. # 62, p. 3 ("plaintiff is entitled to discovery to cause the defendants to produce the above memtion (sic) documents"). I agree. The parties should conduct discovery on the issue of plaintiff's attempt to exhaust his administrative remedies at Collins. Following the conclusion of that discovery, the parties may file whatever subsequent motions are appropriate. *See generally Perez v. Blot,* 195 F.Supp.2d 539, 545–46 (S.D.N.Y. 2002) (motion to compel discovery on the issue of exhaustion granted where record was not clear regarding plaintiff's efforts to exhaust his claims).

## CONCLUSION

Defendants' motion for summary judgment (Dkt.# 54) is granted in part and

denied in part. Plaintiff first claim against defendants Sally B. Johnson and Kirk Gilbert is dismissed without prejudice.

IT IS SO ORDERED.