Jerry **PEREZ**, Plaintiffs,

v.

**M. BLOT, P. Frazier, and J. White, in their individual capacities, Defendants.**

**No. 01 CIV. 7277(WK).**

United States District Court, S.D. New York.

April 10, 2002.

Joel Landau, Prisoners' Legal Services of New York, Albany, for Plaintiff.

Valerie Singleton, Office of the Attorney General, New York, for Defendants.

## OPINION & ORDER

KNAPP, Senior District Judge.

Plaintiff Jerry Perez ("Plaintiff") is currently an inmate at the Auburn Correctional Facility. Plaintiff brought this excessive force action pursuant to 42 U.S.C. § 1983 in order to recover damages for an alleged assault he suffered at the hands of three correctional officers, Defendants M. Blot ("Blot"), P. Frazier ("Frazier"), and J. White ("White") (collectively "Defendants"), while he was an inmate at the Sing Sing Correctional Facility.

Plaintiff has sought discovery as to, *inter alia*, the various grievance efforts, both formal and informal, which he pursued to exhaust his administrative remedies in regards to that assault as well as any investigations which may have resulted therefrom. However, Defendants refuse to provide discovery beyond that which relates to Plaintiff's formal grievance efforts pursuant to the procedure enumerated in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701, *et seq.*, until we first address their forthcoming motion to dismiss Plaintiff's action on the grounds that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

Since Plaintiff contends that the discovery he seeks is directly relevant to the issue of whether or not he sufficiently exhausted his administrative remedies (and therefore to Defendants' forthcoming motion), he requests that, *before* considering the motion to dismiss, we order Defendants (a) to provide him with all documents related to an investigation purportedly conducted by the Inspector General's Office of the Department of Correctional Services ("DOCS") in response to Plaintiff's alleged informal complaints and (b) to allow him to depose DOCS officials with respect to whether Plaintiff's informal complaints satisfied the essential functions of a formal administrative grievance. For the reasons that follow, we hereby grant Plaintiff's request.

## BACKGROUND

In May 2000, Plaintiff was an inmate at the Sing Sing Correctional Facility ("Sing Sing"). Compl. ¶¶ 3, 6. On May 19, 2000, he was moved from the area of the correctional facility which houses the general prison population to a Special Housing Unit in the "HBC." Compl. ¶ 6.

While processing him for admission into the HBC, Blot allegedly asked Plaintiff why he was being admitted to that unit. Compl. ¶ 8. When Plaintiff informed him that he had been accused of assaulting another inmate, Blot inquired as to whether Plaintiff knew how inmates who assaulted other inmates were treated at Sing Sing. *Id.* After Plaintiff failed to respond to this inquiry, Blot purportedly slapped Plaintiff with an open hand across the face without provocation. Compl. ¶ 9. Immediately thereafter, all three Defendants allegedly "inflicted an unprovoked, wanton and malicious assault upon the plaintiff" by throwing him to the ground, hitting him with a baton, punching him, kicking him, and otherwise physically abusing him. Compl. ¶¶ 10–11.

As a result of this alleged assault, Plaintiff suffered a fracture of the left medial orbital near his eye as well as multiple contusions, abrasions, swelling and other injuries about his head and body. Compl. ¶ 14. He also purportedly suffered emotional distress as a result of the assault. *Id.*

Plaintiff contends that this assault violated his Eighth and Fourteenth Amendment rights under the United States Constitution. Consequently, on August 3, 2001, he filed this action pursuant to 42 U.S.C. § 1983 in order to recover damages for the deprivation of his constitutional rights.

Defendants have indicated that they shortly intend to move to dismiss Plaintiff's action on the grounds that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. In his Complaint, Plaintiff never discussed whether he took any efforts to exhaust his administrative remedies. However, while Plaintiff's counsel is unsure as to whether Plaintiff ever filed a *formal* grievance about the assault, Plaintiff's counsel has apparently been informed that Plaintiff complained about the incident less formally to numerous correctional officials, both verbally and in writing, and that an exhaustive internal investigation was conducted by the Inspector General's Office of the Department of Correctional Services ("DOCS") in response to his complaints. *See* March 1, 2002 Landau Letter at 1; April 2, 2002 Landau Letter at 2. As a result of that investigation, the Inspector General's Office purportedly concluded that some or all of the defendants in this federal action had used excessive force and allegedly referred the matter for further investigation to the New York State Police Bureau of Criminal Investigation. *See* March 1, 2002 Landau Letter at 1–2; April 2, 2002 Landau Letter at 1. Upon further investigation, the state police thereafter allegedly referred the matter to the Westchester County District Attorney's office for prosecution of the correctional officers. *See* April 2, 2002 Landau Letter at 1.

Plaintiff contends that these complaints and the ensuing investigation purportedly conducted by the Inspector General's Office satisfied the exhaustion requirement imposed by the Prison Litigation Reform Act regardless of whether or not Plaintiff filed a formal grievance pursuant to the Inmate Grievance Program procedure set forth in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.7. In order to advance this defense, Plaintiff has sought discovery of, among other things, all documents related to the investigation purportedly conducted by the Inspector General's Office. Plaintiff's counsel has also indicated that, in response to Defendants' forthcoming motion to dismiss, it may be necessary to depose various DOCS officials to determine whether, in their view, Plaintiff's less formal complaints satisfied the essential functions of a formal administrative grievance.

In sharp contrast, Defendants contend that Plaintiff's less formal complaints and the ensuing investigation conducted by the Inspector General's Office do not satisfy the exhaustion requirement and that, accordingly, they are not pertinent to the issue of whether Plaintiff exhausted the appropriate administrative remedies. Consequently, although they are willing to provide discovery with respect to any efforts which Plaintiff may have made to pursue formal administrative grievances regarding the assault, they are unwilling to provide any further discovery beyond that until we have first addressed their forthcoming motion to dismiss Plaintiff's action (if, indeed, any discovery remains necessary after our decision). As Plaintiff asserts that his complaints and the investigation which supposedly ensued therefrom are directly relevant to the issue of whether he satisfied the exhaustion requirement, Plaintiff requests that, before considering the forthcoming motion, we order Defendants (a) to provide him with all documents related to the investigation conducted by the Inspector General's Office with respect to the May 19, 2000 assault and (b) to allow him to depose DOCS officials with respect to whether Plaintiff's complaints satisfied the essential functions of a formal administrative grievance.

## DISCUSSION

 "Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies

before filing suit in court." *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 987, —— L.Ed.2d —— (2002). However, "Congress, in enacting the Prison Litigation Reform Act of 1995(Act), Pub.L. No. 104–134, Title VIII, 110 Stat. 1321–66 (1996), carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing suit under 42 U.S.C. § 1983." *Neal v. Goord* (2d Cir.2001) 267 F.3d 116, 119.

■ The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Hence, "[a] prisoner must exhaust all available remedies before bringing an action regarding prison conditions." *Santiago v. Meinsen* (S.D.N.Y.2000) 89 F.Supp.2d 435, 438. The Supreme Court recently held that this exhaustion requirement applies to 42 U.S.C. § 1983 excessive force claims. *See Porter*, 534 U.S. at —— – ——, 122 S.Ct. at 987–992.

"New York provides an elaborate administrative grievance process for prisoners in New York State correctional facilities." *Cruz v. Jordan* (S.D.N.Y.1999) 80 F.Supp.2d 109, 117. *See also* N.Y. CORRECT. LAW § 139; 7 N.Y. COMP. CODES R. & R., tit. 7, § 701, *et seq.* In *Cruz*, Judge Hellerstein described in exacting detail the administrative grievance remedies available, pursuant to the Inmate Grievance Program ("IGP") set forth in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701, *et seq.*, to individuals such as Plaintiff who are inmates in New York State correctional facilities and we need not elaborate on his extensive discussion. *See Cruz*, 80 F.Supp.2d at 117–118.

■ Plaintiff's counsel is unsure as to whether Plaintiff ever filed a *formal* grievance in accordance with the IGP procedure enumerated in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.7. However, Plaintiff has informed his counsel that he complained about the May 19, 2000 assault less formally to numerous correctional officials, both verbally and in writing, and, according to Plaintiff, the Inspector General's Office of DOCS conducted an exhaustive internal investigation *in response* to those complaints. As a result of that investigation, the Inspector General's Office concluded that some or all of the named defendants had in fact used excessive force. Thereafter, the Inspector General's Office referred this matter to the New York State Police Bureau of Criminal Investigation, which, upon further investigation, referred the matter to the Westchester County District Attorney's office for prosecution of the officers.

Although Defendants are willing to provide discovery with respect to the more formal grievance efforts which Plaintiff may have pursued in accordance with the elaborate procedure set forth in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.1, *et seq.*, they refuse to provide discovery with respect to Plaintiff's less formal complaints to correctional officials about the alleged assault and the ensuing investigation which purportedly resulted therefrom until we first address their forthcoming motion to dismiss. In essence, they contend that such efforts would be insufficient to satisfy the exhaustion requirement imposed by the PLRA and would therefore not be pertinent to the issue of whether Plaintiff exhausted the appropriate administrative remedies.

As Plaintiff's counsel has noted, the relevant administrative process includes both a formal grievance procedure, as enumerated in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.7, and an expedited, less formal grievance procedure for "harassment"

which is described in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11. This latter procedure applies to grievances which arise as a result of "[e]mployee misconduct meant to . . . harm an inmate." *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(a). As Defendants concede, *see* April 8, 2002 Singleton Letter at 2, an inmate may pursue a grievance regarding an assault at the hands of correctional officers by following the less formal procedure set forth in Section 701.11. *See Cross v. Radomski* (S.D.N.Y. Aug.18, 2000) 2000 WL 1175771, *1–*2. Specifically, in accordance with this expedited procedure, the inmate "should first report such occurrences to the immediate supervisor of that employee [who purportedly committed the misconduct]." 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(1). The inmate's "allegations" must then be given a grievance number and recorded in sequence. 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(2). Thereafter, the Superintendent or his designee must determine whether the grievance, if true, would represent a bona fide case of harassment. *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(3).

If the Superintendent determines that the grievance does not represent a bona fide case of harassment, then the grievance is submitted to the Inmate Grievance Resolution Committee for resolution in conformance with the IGP process discussed in Section 701.7. *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(3). If, on the other hand, the Superintendent determines that the grievance does represent a bona fide case of harassment, he is required either to: (i) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance, or (ii) request an investigation by the Inspector General's Office or, if the Superintendent determines that criminal activity is involved, by the New York State Police Bureau of Criminal In-

vestigation. *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(4)(i)-(ii).

Defendants assert that Plaintiff "lodged his grievance directly with the Inspector General" and therefore failed to follow even the expedited procedure discussed above as he purportedly did not submit a "formal grievance at the correctional facility level as contemplated by the provisions of § 701.11." *See* April 8, 2002 Singleton Letter at 2–3. However, the merit of that contention is unclear at this early stage in the litigation. Although at least one court has determined that an inmate's *direct complaints* to the Inspector General's office "do not serve to excuse [a] plaintiff from adhering to the available administrative procedures" enumerated in 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.1, *et seq.*, *Grey v. Sparhawk* (S.D.N.Y. June 23, 2000) 2000 WL 815916, *2, we have not yet been provided with sufficient information to determine whether Plaintiff actually complained directly to the Inspector General's Office or whether he instead pursued his grievance in accordance with the provisions of Section 701.11 by submitting his allegations to the appropriate correctional authorities.

Indeed, whereas Defendants contend that Plaintiff pursued his grievance solely through the Inspector General's Office, Plaintiff asserts that he also complained to various "correctional officials" regarding the assault. Pursuant to the expedited procedure for allegations of harassment, an inmate need only "report" the purported harassment "to the immediate supervisor of that employee" who supposedly committed the misconduct in order to trigger the expedited grievance process. 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(a)(1). Nothing in the relevant regulations indicates that the inmate's "report" must consist of a formal grievance complaint such as that required pursuant

to the normal grievance procedure enumerated in Section 701.7(a)(1). In fact, Section 701.11(b)(1) states that the inmate's report will not preclude the submission of a formal grievance pursuant to Section 701.7. *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11(b)(1). Moreover, where Section 701.7(a)(1) specifically provides that the inmate's complaint must be submitted on Inmate Grievance Complaint Form # 2131 and Section 701.7(a)(1)(i) outlines the specific content which the inmate must include on that form, Section 701.11(b)(2) refers to the requisite report as the inmate's "allegations of misconduct" and does not specify that those allegations should be submitted on a particular form or should discuss particular information. *See* 7 N.Y. COMP. CODES R. & R., tit. 7, §§ 701.7(a)(1), 701.7(a)(1)(i), 701.11(b)(2). In sum, these IGP provisions suggest that the "report" does not constitute a "formal grievance" and that the report may consist of allegations of employee harassment which need not necessarily be set forth in the same type of formal, documentary complaint which must otherwise be submitted in the course of complying with the more formal strictures of Section 701.7. Allowing inmates to complain about harassment in this manner without forcing them to submit such a "formal grievance" is wholly consistent with the purpose of Section 701.11, which provides for an expedited procedure precisely because "[a]llegations of employee harassment are of particular concern to the administrators of the department facilities." *See* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.11.

Accordingly, assuming that Plaintiff's allegations are true, discovery as to his less formal verbal and written complaints to "correctional officials" and the investigation which supposedly ensued therefrom is directly relevant to the question of whether he exhausted his administrative remedies pursuant to the expedited procedure set out in Section 701.11. To the extent that he reported allegations relating to the May 19, 2000 assault to the appropriate officials, he may have satisfied the exhaustion requirement imposed by the PLRA by complying with the expedited process enumerated above. Since an investigation by the Inspector General's Office is among the very results which may be triggered by a Superintendent's determination that a grievance represents a bona fide case of harassment, discovery with respect to any such investigation may indicate whether correctional officials interpreted Plaintiff's allegations as a harassment grievance within the meaning of Section 701.11, whether they viewed his allegations as a bona fide case of harassment, and to what extent, if any, Plaintiff and the correctional officials generally followed the procedure which applies to allegations of harassment.

In addition, Plaintiff's requested discovery would be relevant to the issue of whether he exhausted his administrative remedies even if he failed to follow the expedited procedure set forth in Section 701.11. In the past, courts repeatedly held that, where an inmate was incarcerated in a New York State correctional facility, his informal grievance efforts could not satisfy the exhaustion requirement of the PLRA. *See Mills v. Garvin* (S.D.N.Y. Mar.2, 2001) 2001 WL 286784, *3 (plaintiff's letters to prison officials were insufficient to exhaust his administrative remedies and plaintiff's complaint should ordinarily be dismissed where he failed to follow the prescribed grievance procedure); *Laureano v. Pataki* (S.D.N.Y. Sept.29, 2000) 2000 WL 1458807, *2 (plaintiff's letter complaints to various prison employees were insufficient to exhaust his administrative remedies as they did not satisfy Section 701.7); *Noguera v. Hasty* (S.D.N.Y. July 21, 2000) 2000 WL 1011563, *12 n. 23, *report and recommendation adopted in part* (S.D.N.Y. Mar.12, 2001) 2001 WL 243535 ("The Court notes that simple letter complaints to the Com-

missioner of the New York State Department of Correctional Services about excessive force and medical indifference appear quite common, and such complaints are not normally sufficient to serve as a proxy for following and exhausting proper administrative remedies"); *Grey,* 2000 WL 815916 at *2 (plaintiff failed to exhaust his available administrative remedies where he complained directly to the Inspector General's Office but failed to file a complaint with the grievance committee); *Beatty v. Goord* (S.D.N.Y. Mar.16, 2000) 2000 WL 288358, *4–*5 (where a Sing Sing inmate grieved his complaint by writing letters to the Superintendent of Sing Sing but failed to utilize the formal grievance procedures set forth in Section 701.7, his efforts were "not sufficient to comply with the Inmate Grievance Program" and he therefore failed to exhaust his administrative remedies); *Santiago,* 89 F.Supp.2d at 438–439 (finding that an inmate incarcerated in a state correctional facility failed to exhaust his administrative remedies because, among other reasons, he did not pursue his claim with the appropriate grievance committee); *Salahuddin v. Mead* (S.D.N.Y. Jun.26, 1997) 1997 WL 357980, *4, *rev'd on other grounds* (2d Cir.1999) 174 F.3d 271 ("Plaintiff's letters of complaint to defendants Kulmann and Coombe are insufficient to exhaust administrative remedies...Plaintiff must follow the procedure established by the inmate grievance resolution committee...and file an official complaint with that committee").

However, the relevant regulations state that "[t]he inmate grievance program...is intended *to supplement, not replace, existing formal or informal channels* of problem resolution." 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.1(a) (emphasis added). Indeed, the regulations provide that "an inmate should seek assistance in resolving a complaint through a guidance unit, program area directly affected, *or other existing channels, informal or formal,* prior to

submitting a formal grievance," and emphasize that "[a]n inmate should be encouraged to attempt to resolve a problem on his/her own." *Id.* 7 N.Y. COMP. CODES R. & R., tit. 7, § 701.3(a) (emphasis added). Accordingly, after the foregoing decisions were issued by courts in this district, the Second Circuit explained that the resolution of a grievance "through informal channels satisfies the exhaustion requirement, as under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy." *Marvin v. Goord* (2d Cir.2001) 255 F.3d 40, 43 n. 3.

Defendants insist that *Marvin* is inapplicable to the circumstances here since the inmate in *Marvin* resolved his grievance informally *"at the correctional level"* whereas Plaintiff here supposedly pursued his grievance informally through the Inspector General's Office. *See* April 8, 2002 Singleton Letter at 4 (emphasis in the original). However, as we have already discussed, neither party has, as of yet, provided us with sufficient information as to whether Plaintiff submitted his complaints directly to the Inspector General's Office or whether he also pursued them through officials at the "correctional level." Indeed, that is exactly the type of information which Plaintiff hopes to discover through the request at issue here in order to advance his defense against Defendants' contention that he failed to appropriately exhaust his administrative remedies.

In *Marvin,* the Second Circuit explained that the plaintiff's "submissions indicate that he succeeded in overturning the prohibition [in question] informally by *complaining to various correctional officials." Marvin,* 255 F.3d at 43 (emphasis added). As in *Marvin,* the Plaintiff here also contends that he successfully obtained as favorable a resolution to his grievance as possible after he complained about the assault to "correctional officials." According

to Plaintiff, it was these complaints which ultimately resulted in the investigation by the Inspector General's Office.

If the discovery requested in this instance ultimately supports Plaintiff's allegations, he may be able to establish that he resolved his grievance through precisely the type of informal channels which are permitted under both *Marvin* and the New York administrative scheme. *See Noguera*, 2000 WL 1011563 at *12 (finding that a plaintiff's letter complaints to the warden about sexual abuse satisfied the exhaustion requirement since the complaint accomplished "everything that might have happened" if she had written out a more formal complaint and formal procedures were triggered by the letter, thereby "providing an administrative record and obviating any threat of weakening or undermining the administrative scheme").[1] To the extent that plaintiff's allegations are true, he would seemingly have accomplished much of what he might otherwise have achieved by way of the formal IGP process, as his alleged complaints to correctional officials about the assault purportedly secured the same favorable resolution available to him pursuant to the procedure enumerated in Section 701 .11. *See* 7 N.Y. Comp. Codes R. & R., tit. 7,

§§ 701.11(b)(3), 701.11(b)(4)(ii). Given the specific manner in which his grievance was supposedly resolved and the fact that money damages were unavailable to him through the IGP process, Plaintiff could not have sought a significantly better result and would have had little reason to appeal from such a resolution. Under these unusual circumstances, it would make little sense to demand that Plaintiff jump through the further, elaborate hoops of the IGP procedure. *See Camp v. Brennan* (3d Cir.2000) 219 F.3d 279, 281 (finding that the plaintiff did not need to jump through any further administrative hoops where his allegations were fully addressed on their merits by the administrative authorities).

The discovery which Plaintiff has requested is therefore directly relevant to, at the very least, the question of whether Plaintiff exhausted his administrative remedies either pursuant to the IGP procedure enumerated in Section 701.11 or through informal channels as permitted under the New York administrative scheme. Accordingly, we grant Plaintiff's request to obtain such discovery *prior* to our consideration of Defendants' forthcoming motion to dismiss. We note that since we have not yet received sufficient infor-

---

1. Defendants ask us to ignore the analysis addressing the exhaustion of administrative remedies which Magistrate Judge Peck articulated in the Report and Recommendation set forth in *Noguera v. Hasty* (S.D.N.Y. July 21, 2000) 2000 WL 1011563, as Judge Wood ultimately chose not to adopt that portion of the recommendation which related to Plaintiff's informal resolution of her excessive force grievance. *See Noguera v. Hasty* (S.D.N.Y. Mar.12, 2001) 2001 WL 243535, *1, *3 n. 4. However, Judge Wood chose not to adopt Judge Peck's analysis regarding Plaintiff's satisfaction of the exhaustion requirement because, after Judge Peck issued his report, the Second Circuit held that the exhaustion requirement did not apply to, among other things, excessive force claims. *See Noguera*, 2001 WL 243535 at *4, *citing Nussle v. Wil-

*lette*, 224 F.3d 95 (2d Cir.2000). Accordingly, rather than adopting Judge Peck's analysis, Judge Wood followed the Second Circuit's decision in *Nussle* and held that the plaintiff's claims were simply not subject to the exhaustion requirement. *See Noguera*, 2001 WL 243535 at *4–*5. The Supreme Court recently overturned the Second Circuit's decision in *Nussle* and held that the exhaustion requirement applied to 42 U.S.C. § 1983 excessive force claims. *See Porter*, 534 U.S. at ——–——, 122 S.Ct. at 987–992. Since Judge Wood's reasons for not adopting the relevant portion of Judge Peck's Report and Recommendation in *Noguera* no longer apply to excessive force claims, we are not constrained from considering Judge Peck's thoughtful analysis.

mation as to Plaintiff's actual efforts to satisfy the PLRA's exhaustion requirement, we take no position today as to whether Plaintiff did or did not exhaust his available administrative remedies.

### CONCLUSION

For the foregoing reasons, Plaintiff's discovery request is hereby GRANTED. Defendants are directed to provide Plaintiff with the discovery which relates to his complaints to correctional officials about the May 19, 2000 assault and the investigation into that assault which was purportedly conducted by the Inspector General's Office.

**SO ORDERED.**