**Lester STEPHENSON, Plaintiff,**

v.

**DUNFORD, et al., Defendants.**

No. 00–CV–6509L.

United States District Court, W.D. New York.

May 10, 2004.

Lester Stephenson, Coxsackie, NY, pro se.

Philip G. Spellane, Harris Beach LLP, Pittsford, NY, for Plaintiff.

Emil J. Bove, Jr., Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Lester Stephenson, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that on April 16, 1999, at which time plaintiff was incarcerated at Attica Correctional Facility, four correctional officers ("C.O.s") and a DOCS sergeant assaulted him. Named as defendants are those five individuals, as well as Walter Kelly, the superintendent of Attica, who is alleged to have failed to adequately train and supervise the other four defendants.

Defendants have moved for leave to amend their answers to assert the affirmative defense of failure to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), as well as for summary judgment on that ground. For the reasons that follow, defendants' motion is granted, and the complaint is dismissed.

## STATUTORY FRAMEWORK

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [section 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." New York State regulations provide for a three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.7. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then sub-

mitted to the inmate grievance resolution committee ("IGRC") for investigation and review. If the IGRC's decision is appealed, the inmate may appeal to the superintendent of the facility, and if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. In general, it is only after exhausting all three levels of the administrative review that a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001); *Santos v. Hauck,* 242 F.Supp.2d 257, 259 (W.D.N.Y.2003).

There is also an alternative procedure available to an inmate who claims that he was harassed by corrections officers. *See* 7 N.Y.C.R.R. § 701.11. Under this expedited or "informal" grievance procedure, an inmate who believes that he has been the victim of employee misconduct or harassment "should first report such occurrences to the immediate supervisor of that employee." The report is then forwarded to the superintendent.

If the inmate's allegations present a harassment issue, the superintendent either: (1) initiates an in-house investigation; or (2) requests an investigation by the inspector general's office (or, if criminal activity is involved, by the New York State Police Bureau of Criminal Investigation). Within twelve working days of receipt of the grievance, the superintendent is to render a decision. If the superintendent fails to do so within twelve days, "the grievant may appeal his grievance to the CORC. This is done by filing a notice of decision to appeal with the IGP clerk." 7 N.Y.C.R.R. § 701.11(6). The inmate must file the appeal within four working days of

receipt of the superintendent's response. § 701.11(7).

The Second Circuit has held "that under the administrative scheme applicable to New York prisoners, resolution of an inmate's grievances through informal channels can satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a)." *Ortiz v. McBride,* 323 F.3d 191, 194 (2d Cir.2003) (citing *Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001) (per curiam)).

At the time of the alleged assault, the Court of Appeals for the Second Circuit had not yet ruled upon the issue of whether an inmate was required to exhaust his administrative remedies before bringing a claim for excessive force under § 1983. Over a year after the alleged assault, the Second Circuit held that the PLRA's exhaustion requirement did not apply to claims pertaining to isolated incidents affecting particular inmates. *See Nussle v. Willette,* 224 F.3d 95 (2d Cir.2000) (*"Nussle"*). The Supreme Court, however, reversed the Second Circuit's decision in *Nussle* on February 26, 2002, holding that " § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (*"Porter"*).

## FACTUAL BACKGROUND

On the form *pro se* complaint,[1] plaintiff checked "Yes" in answer to a question asking whether he had filed a grievance about his claim. He stated that he filed a complaint with the Inspector General's Office ("IGO") and that it was found to be unsubstantiated. He also stated that he did not appeal the decision. Where the

---

**1.** Plaintiff commenced the action *pro se.* The Court appointed counsel to represent plaintiff

in December 2001.

form asked why not, plaintiff wrote, "Last course of action available."

In their motion, defendants state that by his own admission, plaintiff did not follow the three-step process outlined above. They have also submitted affidavits of David D. Caryl, the IGP Supervisor at Attica, and Thomas G. Eagen, the Director of the IGP, stating that a search of IGP records did not uncover any record of plaintiff having filed a grievance concerning the alleged assault, or any record that CORC ever received an appeal from plaintiff concerning the assault. *See* Docket # 63, Exs. 1 and 2.

In opposition to defendants' motion, plaintiff has submitted an affidavit stating that he wrote four letters regarding the incident. The first, written "immediately" after the incident, was addressed to Superintendent Kelly. Plaintiff states, however, that he did not retain a copy of this grievance.[2]

Plaintiff states that he wrote this first letter in an attempt to comply with the informal grievance process. That process ordinarily requires the inmate to report the incident to the immediate supervisor of the alleged perpetrator, but plaintiff says that he could not submit it to the area supervisor, Sgt. Stachewicz, since he was one of the people involved. (Stachewicz is a named defendant in this action.)

The second "grievance" was dated April 22, 1999, and addressed to the IGO. Plaintiff also provided a copy to First Deputy Superintendent James Berbary at Attica. Plaintiff's Aff. (Docket # 70) Ex. A. Plaintiff also copied that grievance by hand the same day and sent it to DOCS Commissioner Glenn Goord. Plaintiff's Aff. Ex. B.

Plaintiff received a response to his letter to Goord, dated May 13, 1999, from Deputy Commissioner Lucien Leclaire. Leclaire said that Kelly had already conducted an investigation into plaintiff's allegations, and that plaintiff had been found guilty of assault at a Tier III hearing on May 6, 1999. Leclaire added, "In the future, address such concerns at the facility level by bringing them to the attention of your area supervisor." Plaintiff's Aff. Ex. C.

Plaintiff's fourth "grievance," dated June 21, 1999, was addressed to Superintendent Victor Herbert (who had replaced Kelly). Plaintiff's Aff. Ex. D. In response, plaintiff received a letter dated July 6, 1999, from Deputy Superintendent of Security John Burns. Burns stated that he had been "led to believe that Lt. Grant spoke with [plaintiff] and the employees cited. Lt. Grant further advises me that your problem has been addressed." Plaintiff's Aff. Ex. E.

Plaintiff also notes that his mother filed a complaint with the IGO around May 12, 1999, concerning the alleged assault. The IGO issued a report on November 16, 1999 finding her complaint to be unsubstantiated. Plaintiff's Aff. Ex. F. Plaintiff says that it is "unclear to [him] ... how this separate investigation fits within [his] grievance process." Plaintiff's Aff. ¶ 9.

## DISCUSSION

### I. Defendants' Motion for Leave to Amend their Answers

Plaintiff contends that defendants' motion to amend should be denied, based primarily on defendants' delay in filing the motion. He argues that, even accepting defendants' assertion that they had no rea-

---

2. The only letter in the record from plaintiff to Kelly, dated April 28, 1999, simply requests that the videotape of plaintiff being moved from D Block to the hospital on the date of the incident be preserved. Bove Reply Affirmation Ex. D.

son to assert an exhaustion defense prior to the Supreme Court's *Porter* decision in February 2002, it was unreasonable for defendants to wait twenty-one months before moving to amend to assert that defense. Discovery closed in April 2003, and Plaintiff never had the opportunity to address the exhaustion issue in discovery. (Plaintiff has not filed a Rule 56(f) affidavit, however, or said what he would need to address in discovery.) Plaintiff contends that by waiting so long, defendants have waived the defense.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." In accordance with that directive, "[p]arties are generally allowed to amend their pleadings absent bad faith or prejudice." *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir.) (internal citations omitted), *cert. denied*, 531 U.S. 979, 121 S.Ct. 427, 148 L.Ed.2d 436 (2000). The Supreme Court has also emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

"Notwithstanding a defendant's failure to timely plead [a] defense, a district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.2003); *accord Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). "Delay alone unaccompanied by [one of

these other factors] does not usually warrant denial of leave to amend." *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir.1995) (affirming grant of leave to amend answer where the motion was made more than four years after the complaint was filed; even though defendant's "reasons for the delay [we]re not entirely clear, [plaintiff] ... offered no reason, such as prejudice or bad faith on [defendant]'s part, to call the district court's decision into question").

In determining what constitutes "prejudice," courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993) (internal citations and quotes omitted).

■ Plaintiff has failed to show prejudice here. Although it is not apparent why defendants waited as long as they did to make their motion, the cases cited above make clear that delay alone is not a sufficient reason to deny a motion to amend.

■ Plaintiff notes that discovery is closed, but he has not identified what relevant information he would seek to obtain through discovery or how any information not already within his possession would reasonably be expected to raise a genuine issue of material fact on the exhaustion issue. *See Oneida Indian Nation v. City of Sherrill,* 337 F.3d 139, 167 (2d Cir.2003), *petition for cert. filed,* 72 U.S.L.W. 3421 (Dec. 11, 2003) (No. 03–855). Since plaintiff has not demonstrated that he will be

prejudiced if the Court grants defendants' motion to amend, that motion is granted.[3]

## II. Defendants' Motion for Summary Judgment

As to the exhaustion issue, plaintiff states that he did attempt to grieve the incident by submitting numerous letter complaints to various DOCS officials. He contends that he attempted to comply with the expedited grievance procedure under 7 N.Y.C.R.R. § 701.11. Plaintiff states that no one at DOCS ever told him that he had not properly grieved the incident, that he needed to follow a different procedure, or that he had the right to appeal the responses he received.

It is clear from the record, however, that plaintiff did *not* comply with the informal grievance procedure. First, he did not report the alleged assault to the immediate supervisor of the DOCS employees involved in the incident. Plaintiff claims that he could not report it to the area supervisor, Sgt. Stachewicz, since he was one of the people involved, but there is no evidence that he reported, or that he was unable to report, the incident to Sgt. Stachewicz's immediate supervisor.

Although plaintiff did write letters about the incident to various DOCS officials, " '[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements.' " *Branch v. Brown*, 2003 WL 21730709, at *8 (S.D.N.Y. July 25, 2003) (quoting *Nelson v. Rodas*, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002)). *See also Houze*

*v. Segarra*, 217 F.Supp.2d 394, 396 (S.D.N.Y.2002) (writing letters to superintendent and Inspector General via parents insufficient to exhaust remedies); *Beatty v. Goord*, 210 F.Supp.2d 250, 255–56 (bypassing the formal grievance procedures and writing letters to the superintendent did not exhaust prisoner's administrative remedies); *Hernandez v. Coffey*, 2003 WL 22241431, at *3 (S.D.N.Y. Sept. 29, 2003) ("it is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements"); *Sedney v. Hasse*, 2003 WL 21939702, at *4 (S.D.N.Y. Aug. 12, 2003) (noting that courts have "repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements"); *Muhammad v. Pico*, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements"); *Hemphill v. New York*, 198 F.Supp.2d 546, 549 (S.D.N.Y.2002) (letter to superintendent is "insufficient" to warrant considering a matter "effectively grieved"); *McNair v. Sgt. Jones*, 2002 WL 31082948, at *7 (S.D.N.Y. Sept. 18, 2002) ("forgoing the step of filing a claim with the IGRC by submitting letters directly to the superintendent does not satisfy the exhaustion requirement"); *Byas v. New York*, 2002 WL 1586963, at *2 (S.D.N.Y. July 17, 2002) ("Permitting a plaintiff to bypass the codified grievance procedure by sending letters directly to the facility's superintendent would undermine the efficien-

---

**3.** I also note that even if defendants had not moved to amend their answers to include the exhaustion defense, the Court would have the discretion to treat defendants' motion for summary judgment as a motion to amend their answers, to include the affirmative defense. *Block v. First Blood Assocs.*, 988 F.2d 344, 350–51 (2d Cir.1993); *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir.2000), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). *See, e.g., Boston v. TAkos*, No. 98–CV–6404S, 2002 WL 31663510, at *3 (W.D.N.Y. Oct. 4, 2002).

cy and the effectiveness that the prison grievance program is intended to achieve").

Even assuming *arguendo* that plaintiff's letters constituted an "informal" grievance, he still failed to exhaust his administrative remedies, since plaintiff never appealed the adverse determinations to CORC. As stated, it does appear that Kelly became aware of plaintiff's allegations at some point. After his April 22, 1999 letter to Commissioner Goord, *see* Bove Reply Affirmation Ex. C at 1, Goord's office faxed a copy of plaintiff's letter to Kelly on April 29 and asked him to investigate plaintiff's complaint. *Id.* at 3.

On May 5, 1999, First Deputy Superintendent Berbary sent the commissioner's office a memorandum "find[ing] no information that would indicate inappropriate action by staff." *Id.* at 4. On May 13, Deputy Commissioner Leclaire wrote a letter to plaintiff informing him that Kelly had conducted an investigation into plaintiff's allegations, and found that plaintiff had assaulted staff, making it necessary for staff to use force to subdue him. *Id.* at 6.

Arguably, then, plaintiff did *initiate* an informal grievance procedure. He never sought to appeal from Kelly's decision, however, and therefore did not exhaust his administrative remedies.

It is well established that to exhaust "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("grievances must now be fully pursued prior to filing a complaint in federal court"), and *Fletcher v. Haase,* No. 99 Civ. 9549(GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002) ("This lawsuit ...

therefore, can only proceed after [plaintiff] has exhausted any available administrative remedies, including all appellate remedies provided within the system")); *see also Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166, 2002 WL 31132874, at *1, *6 (S.D.N.Y. Sept. 25, 2002) (noting that "action must be dismissed because [plaintiff] unreasonably failed to appeal"). In short, the prisoner "must pursue his challenge to the conditions in question through to the highest level of administrative review prior to his suit." *Flanagan v. Maly,* 2002 WL 122921, at *2 (S.D.N.Y. Jan. 29, 2002).

That principle applies regardless of whether the "formal" or "informal" procedure is used. "[E]ven under the expedited procedure, plaintiff is required to appeal any decision to the CORC in order to exhaust." *Velez v. Kulhmann,* 2003 WL 22004899, at *3 (S.D.N.Y. Aug. 22, 2003); *see also Rodriguez v. Ward,* 2003 WL 22283810, at *3 (S.D.N.Y. Oct. 3, 2003) ("Additionally, Plaintiff neglected to appeal the superintendent's conclusion to the Central Office Review Committee. Therefore, ... the evidence in the instant case sufficiently and conclusively demonstrates that Plaintiff failed to exhaust his administrative remedies ...").

There is authority that the exhaustion requirement is satisfied where an informal grievance results in a result *favorable* to the inmate. In *Perez v. Blot,* 195 F.Supp.2d 539, 544–46 (S.D.N.Y.2002), for example, after the inmate plaintiff complained about the incident giving rise to his suit to numerous DOCS officials, an exhaustive internal investigation was conducted by the Inspector General's Office, as a result of which the Inspector Gener-

al's Office purportedly concluded that some or all of the defendants in the later federal action had used excessive force, and allegedly referred the matter for further investigation to the New York State Police Bureau of Criminal Investigation. Upon further investigation, the state police allegedly referred the matter to the local district attorney's office for prosecution of the correctional officers involved.

Denying the defendants' motion for summary judgment, the court granted the plaintiff's discovery request, relying in part upon the Second Circuit's decision in *Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001), in which the court held that the resolution of a grievance "through informal channels satisfies the exhaustion requirement, as under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy."

In reaching its decision, however, the district court in *Perez* noted that "[i]n *Marvin,* the Second Circuit explained that the plaintiff's 'submissions indicate that he *succeeded* in overturning the prohibition [in question] informally by complaining to various correctional officials.'" *Perez,* 195 F.Supp.2d at 545 (quoting *Marvin,* 255 F.3d at 43 (emphasis added)). The court added that "[a]s in Marvin, the Plaintiff here also contends that he successfully obtained as favorable a resolution to his grievance as possible after he complained about the assault to 'correctional officials.'" *Id.* The court said that since the "[p]laintiff's' alleged complaints to correctional officials about the assault purportedly secured the same favorable resolution available to him pursuant to the [formal] procedure.... [I]t would make little sense to demand that Plaintiff jump through the further, elaborate hoops of the IGP procedure".

■ Both *Perez* and *Marvin,* then, merely stand for the proposition "that a grievance through informal channels satisfies the exhaustion requirement if the prisoner thereby obtained a favorable resolution of his grievance." *Nelson v. Rodas,* No. 01CIV7887, 2002 WL 31075804, at *3 n. 9 (S.D.N.Y. Sept. 17, 2002). If an inmate receives a favorable decision, of course, he has nothing to appeal to CORC.

Here, though, plaintiff received an *un*-favorable result. Assuming that this was an informal grievance, he could have appealed that to CORC. There is no reason to excuse his failure to appeal simply because this was not a formal grievance. It would make little sense to hold that an inmate who goes through formal grievance channels must appeal to CORC in order to satisfy the exhaustion requirement, but that an inmate who instead merely writes letters to DOCS officials need not do so. That would simply encourage inmates to bypass the formal grievance procedure altogether, and would not be consonant with either the intent behind the PLRA or the New York regulatory scheme. *See Porter,* 534 U.S. at 530, 122 S.Ct. 983 ("It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option").

Plaintiff also claims that no one at DOCS ever told him that he could appeal the superintendent's decision. Defendants, however, have submitted evidence that plaintiff received a copy of the inmate orientation manual, which sets forth the appeal process, on May 10, 1997. *See* Bove Reply Affirmation Ex. B. There is also evidence that plaintiff had previously appealed grievances all the way to CORC, so he clearly was aware of and understood the appeal process and how it works. Eagen Decl. (Docket # 6) Ex. A.

There is no evidence that defendants affirmatively led plaintiff to believe that he could not appeal, or that he did not have to appeal in order to exhaust his remedies. Courts have held that administrative remedies that have not technically been exhausted may nonetheless be waived or estopped under exceptional circumstances, such as where "(1) an inmate was led to believe by prison officials that his alleged incident was not a 'grievance matter' and assured that his claims were otherwise investigated ... (2) an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts, and (3) the state's time to respond to the grievance has expired." *O'Connor v. Featherston*, 2002 WL 818085, *2–3 (S.D.N.Y. Apr. 29, 2002) (collecting cases).

There is no such evidence here. I do not believe that defendants had an obligation to tell plaintiff that he could appeal from Kelly's adverse decision, especially when the inmate handbook expressly states, "If you are not satisfied with the decision of the Superintendent, you can then appeal your case to the Central Office Review Committee...." Bove Reply Decl. Ex. B at 10. Since plaintiff had been apprised of the appeals process, defendants' failure to expressly tell him that he could appeal the specific decisions concerning the alleged assault does not excuse plaintiff's failure to exhaust.

Plaintiff also relies on this Court's decision in *Lane v. Doan*, 287 F.Supp.2d 210 (W.D.N.Y.2003), in which I denied the defendants' motion for summary judgment based on my finding that the plaintiff had made reasonable attempts to file and prosecute his grievances. The plaintiff in *Lane*, however, well documented his efforts to grieve the incident in that case, and there was evidence that DOCS officials simply ignored his complaints, thereby effectively thwarting his ability to grieve his claim. *Id.* at 212–13. In contrast, plaintiff in the case at bar does not contend that defendants ignored his complaints, or that he was prevented from filing a grievance. He admits that he bypassed the grievance program and sent complaints directly to the superintendent, IGO, and Commissioner. It is also undisputed that he did in fact receive a ruling on his assault allegations, albeit an unfavorable one, and that he failed to appeal it to CORC. Plaintiff's reliance on *Lane* is therefore misplaced.[4]

## CONCLUSION

Defendants' motion for leave to amend their answers and for summary judgment (Docket # 63) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

4. I also note that at the time of the incident, the law in this circuit was unsettled as to whether the PLRA's exhaustion requirement applies to all inmate claims, or only to claims relating to general prison conditions. Although plaintiff has not raised the argument that this excuses his failure to exhaust, this Court recently rejected such an argument, *see Thomas v. Cassleberry*, 315 F.Supp.2d 301, 303, 2004 WL 905856, at *2 (W.D.N.Y.2004). For the reasons stated in *Thomas*, I reject that argument here as well.